No. 25-3493

# In the United States Court of Appeals for the Ninth Circuit

STATE OF CALIFORNIA, *et al.*,
PLAINTIFFS-APPELLANTS,

*v.*

DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,
DEFENDANTS-APPELLEES.

ON APPEAL FROM THE U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

**BRIEF OF AMERICA FIRST LEGAL FOUNDATION AND COALITION FOR A PROSPEROUS AMERICA AS *AMICI CURIAE* IN SUPPORT OF APPELLEES**

R. TRENT MCCOTTER
BOYDEN GRAY PLLC
800 Connecticut Ave. NW
Suite 900
Washington, DC 20006
202.706.5488
tmccotter@boydengray.com

DANIEL Z. EPSTEIN
AMERICA FIRST LEGAL
FOUNDATION
611 Pennsylvania Ave. SE #231
Washington, DC 20003

Counsel for *Amici Curiae*

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, *Amici Curiae* state that they have no parent companies, and no publicly-held company has a 10% or greater ownership interest in them.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... iii
IDENTITY AND INTEREST OF *AMICI CURIAE* ................................. 1
SUMMARY OF ARGUMENT ................................................................. 2
ARGUMENT ............................................................................................ 2
    The District Court Correctly Held It Lacked Jurisdiction .................. 2
CONCLUSION ....................................................................................... 12

ii

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Dolan v. U.S. Postal Serv.*,
  546 U.S. 481 (2006) ................................................................................ 6

*Earth Island Inst. v. Christopher*,
  6 F.3d 648 (9th Cir. 1993) ..................................................................... 10

*Hertz Corp. v. Friend*,
  559 U.S. 77 (2010) ............................................................................ 3, 10

*Int'l Lab. Rts. Educ. & Rsch. Fund v. Bush*,
  954 F.2d 745 (D.C. Cir. 1992) .............................................................. 3, 9

*Int'l Lab. Rts. Fund v. Bush*,
  357 F. Supp. 2d 204 (D.D.C. 2004) ......................................................... 9

*K Mart Corp. v. Cartier, Inc.*,
  485 U.S. 176 (1988) ..................................................................... 2, 8, 11

*Kosak v. United States*,
  465 U.S. 848 (1984) ................................................................................ 6

*Metz v. United States*,
  788 F.2d 1528 (11th Cir. 1986) ...................................................... 5, 6, 7

*Regan v. Wald*,
  468 U.S. 222 (1984) ................................................................................ 7

*United States v. Gonzales*,
  520 U.S. 1 (1997) .................................................................................... 5

*United States v. Shearer*,
  473 U.S. 52 (1985) .................................................................................. 7

*United States v. Universal Fruits & Vegetables Corp.*,
  370 F.3d 829 (9th Cir. 2004) ................................................................... 4

**Statutes**

28 U.S.C. § 1337 ............................................................................................... 11

28 U.S.C. § 1581 ....................................................... 3, 4, 5, 6, 7, 8, 9, 10, 11

28 U.S.C. § 1585 ............................................................................................... 11

50 U.S.C. § 1701 ............................................................................................ 4, 8

50 U.S.C. § 1702 .................................................................................................2

## IDENTITY AND INTEREST OF *AMICI CURIAE*[1]

America First Legal Foundation is a nonprofit organization dedicated to promoting the rule of law in the United States and defending individual rights guaranteed under the Constitution and federal statutes. As part of *Amicus*'s commitment to the rule of law, it seeks to ensure that principles of jurisdiction are strictly enforced.

*Amicus curiae* the Coalition for a Prosperous America ("CPA") is a national organization focused on representing the tax and trade policy interests of domestic manufacturers, farmers, and workers. Founded in 2007, CPA seeks to promote domestic self-sufficiency, quality job opportunities, and the nation's security by advocating for policy that best supports those concerns.

---

[1] No person other than *amici curiae* and their counsel assisted with or made a monetary contribution for preparing or submitting this brief. All parties have consented to the filing of this brief.

1

## SUMMARY OF THE ARGUMENT

The district court was correct to send this case to the Court of International Trade. *Amici* proffer an alternative and independent reason to reach that same conclusion, based on the plain text of the relevant jurisdictional provisions and the International Emergency Economic Powers Act (IEEPA).

## ARGUMENT

**The District Court Correctly Held It Lacked Jurisdiction.**

The Court of International Trade has exclusive jurisdiction over cases arising from statutes that authorize certain tariffs, duties, embargoes, or other similar acts. This regime ensures that the nation's judiciary speaks with one voice on those important matters of international trade. *See K Mart Corp. v. Cartier, Inc.*, 485 U.S. 176, 187–88 (1988).

IEEPA does not expressly provide a cause of action[2] and thus does not state which court has jurisdiction over civil actions arising out of it. Even assuming a cause of action does exist for challenging the President's

---

[2] One provision implies that IEEPA itself provides no such review. *See* 50 U.S.C. § 1702(c) ("This subsection does not confer or imply any right to judicial review.").

2

invocation of IEEPA, such a case would belong in the Court of International Trade because of a separate statutory provision addressing that Court's jurisdiction.

Section 1581(i) of Title 28—which has been labeled a "broad jurisdictional grant"[3]—says that the Court of International Trade "shall have exclusive jurisdiction" over "any civil action commenced against" the federal government where the action "arises out of any law of the United States providing for," *inter alia*, "embargoes … for reasons other than the protection of the public health or safety." 28 U.S.C. § 1581(i)(1), (i)(1)(C).

That imposes a form of categorical approach: if the civil action arises out of a statute providing for embargoes on certain bases, then the action can be heard only in the Court of International Trade—regardless of whether the particular suit actually implicates embargoes. That ensures jurisdiction can be determined quickly and without the merits and jurisdiction becoming entangled. *See Hertz Corp. v. Friend*, 559 U.S.

---

[3] *Int'l Lab. Rts. Educ. & Rsch. Fund v. Bush*, 954 F.2d 745, 747 (D.C. Cir. 1992) (Henderson, J., concurring).

3

77, 94 (2010) ("[A]dministrative simplicity is a major virtue in a jurisdictional statute.").

IEEPA provides for (among many other things) embargoes to protect the "economy of the United States." 50 U.S.C. § 1701(a). Because that means IEEPA provides for embargoes for a reason other than public health and safety, and because Plaintiffs' civil action arises from IEEPA, each requirement of § 1581(i)(1) is satisfied, as explained below.

Even if there were a doubt, however, any perceived "conflicts" between the Court of International Trade's "exclusive … jurisdiction and the broad jurisdiction of the district courts should be resolved by upholding the exclusivity of the [Court of International Trade's] jurisdiction." *United States v. Universal Fruits & Vegetables Corp.*, 370 F.3d 829, 833 n.7 (9th Cir. 2004).

***Civil Action Against the Federal Government.*** There can be no dispute this is a "civil action commenced against the United States, its agencies, or its officers." 28 U.S.C. § 1581(i)(1). Plaintiffs name President Trump and several other federal officials (in their official capacities) and agencies as Defendants.

4

***Arises Out of IEEPA.*** This civil action also "arises out of" IEEPA. *Id.* Section 1581(i) does not say that the "civil action" must be *provided for* or *authorized by* the relevant law (i.e., IEEPA). Rather, Congress used the broader term "arising out of" to indicate a looser causal connection.

The "Supreme Court … has indicated that the phrase 'arising out of' should be broadly construed" in the context of federal statutes. *Metz v. United States*, 788 F.2d 1528, 1533 (11th Cir. 1986). A natural meaning of "arising out of it" is that something is "associated in any way with" something else. *Id.* (quoting *Kosak v. United States*, 465 U.S. 848, 854 (1984)). At the very most, something can be said to arise out of specific "underlying governmental conduct" when the conduct is "'essential' to plaintiff's claim." *Id.* at 1534 (quoting *Block v. Neal*, 460 U.S. 289, 297 (1983)). Further, Congress twice used the word "any" in § 1581(i) (i.e., "any civil action" and "any law") to re-emphasize this broadness. *See United States v. Gonzales*, 520 U.S. 1, 5 (1997) ("[T]he word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'").[4]

---

[4] Although cases like *Metz* and *Kosak* arose in the context of the Federal Tort Claims Act, the Supreme Court has made clear that its

5

This action "aris[es] out of" IEEPA because that law is "associated in any way with" and is "essential" to this civil action, given that the Complaint is entirely premised on IEEPA, its scope, and its use by the President, which prompted this suit. *See Metz*, 788 F.2d at 1533–34.

Even if there were other claims, it would not change the conclusion that transfer was appropriate. The Supreme Court has held, for example, that a plaintiff cannot evade a statutory bar on claims "*arising out of* assault or battery" simply "by framing her complaint in terms of negligent failure to prevent the assault and battery," because the statute "does not merely bar claims *for* assault or battery" but rather "in sweeping language it excludes any claim *arising out of* assault or battery." *United States v. Shearer*, 473 U.S. 52, 55 (1985) (emphases in original).

Likewise here, all that matters for this element is whether, under the statute's "sweeping language," this civil action arises out of IEEPA.

---

interpretation of the phrase "arising out of" in those cases did "not implicate the general rule that 'a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign.'" *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 491–92 (2006) (quoting *Lane v. Pena*, 518 U.S. 187, 192 (1996)). In other words, the Court held that the phrase "arising out of" is naturally broad, even without a thumb on the scale.

6

*Id.* It does, as explained above, because this entire suit is premised on IEEPA and the President's invocation of that law. *See Metz*, 788 F.2d at 1533–34.

***IEEPA Provides for Embargoes on Non-Public-Health-and-Safety Grounds.*** The only remaining inquiry is whether IEEPA provides for "embargoes … for reasons other than the protection of the public health or safety." 28 U.S.C. § 1581(i)(1)(C).

IEEPA has long been recognized as providing for embargoes. *See, e.g.*, *Regan v. Wald*, 468 U.S. 222, 225–28 (1984) (holding that IEEPA and the Trading with the Enemy Act both gave the President "essentially the same" powers, including "broad authority to impose comprehensive embargoes on foreign countries").[5] And that embargo power can be triggered on the grounds of protecting the "economy of the United States." 50 U.S.C. § 1701(a). That is certainly not a "public health and safety" ground. *See K Mart*, 485 U.S. at 184 (distinguishing embargoes based on

---

[5] The Supreme Court has held that § 1581(i) uses "the ordinary meaning of the word 'embargoes,'" which are "government order[s] prohibiting commercial trade with individuals or businesses of other nations," or "a policy which prevents goods from entering a nation and which may be imposed on a product or on an individual country." *K Mart*, 485 U.S. at 184 (cleaned up).

7

"trade policy" from embargoes based on "public health" or "safety" grounds, which addressed things like adulterated foods or vehicles that do not conform to federal safety standards).

Taken together, this means IEEPA provides for embargoes for reasons other than the protection of the public health and safety—and thus satisfies the final requirement under § 1581(i)(1).

To be clear, § 1581(i)(1)(C) does not say that the relevant law must provide for embargoes *exclusively* "for reasons other than the protection of the public health or safety." Rather, so long as IEEPA affirmatively authorizes an embargo for *any reason* other than public health and safety, that is sufficient. And IEEPA undoubtedly does. It is irrelevant whether IEEPA might *also* provide for embargoes on *other* grounds, like public health and safety. *See Int'l Lab. Rts. Educ. & Rsch. Fund*, 954 F.2d at 747 (Henderson, J., concurring) ("The phrase 'providing for' [in § 1581] has a broader meaning than the simple verb 'provide' and can be construed to mean 'relating to,' as the Supreme Court has done in considering this very provision.").

Also note that this element of § 1581(i) does not ask what kind of claim the plaintiff brings, or how the relevant law was invoked in this

8

particular challenge. The statute imposes a form of categorical approach: if IEEPA provides for certain types of embargoes (and it does), then it satisfies this requirement. Thus, as other courts have held, the inquiry is "whether that law (rather than the specific claims set forth by the plaintiff) provides for an embargo." *Int'l Lab. Rts. Fund v. Bush*, 357 F. Supp. 2d 204, 209 n.3 (D.D.C. 2004).

That is by design to ensure that the question of jurisdiction is straightforward and largely based on the nature of the statute at issue, rather than disputed parsing of specific claims or arguments. "[A]dministrative simplicity is a major virtue in a jurisdictional statute." *Hertz*, 559 U.S. at 94.

And again, any doubts are construed in favor of transfer because, as this Court has recognized, § 1581(i) was added in 1980 to "*expand*[] the jurisdiction of the CIT beyond that of the earlier Customs Court," and thereby send more embargo- and tariff-related cases to that court. *Earth Island Inst. v. Christopher*, 6 F.3d 648, 651 (9th Cir. 1993) (emphasis added).

Channeling such suits to the Court of International Trade makes perfect sense: it ensures a single trial-level court hears challenges to civil

9

suits arising out of statutes related to certain trade actions that are national—really, international—in effect. Rather than a multitude of challenges brought in different district courts whenever the President invokes such a law, with each court potentially reaching contradictory determinations, there will instead be a single court reaching a single determination. That concern is not hypothetical. There were multiple suits filed in different district courts challenging the President's invocation of IEEPA.

The Supreme Court itself has recognized that Congress "enacted the jurisdictional provision" at § 1581 "first and foremost, to remedy the confusion over the division of jurisdiction between the Customs Court (now the Court of International Trade) and the district courts and to '*ensure ... uniformity in the judicial decisionmaking process.*'" *K Mart*, 485 U.S. at 187–88 (emphasis added). Further, the Court of International Trade is more than capable of resolving such disputes, as Congress has given it the same powers in law and equity as a U.S. District Court. 28 U.S.C. § 1585.

Because all requirements of § 1581(i)(1) are met, the Court of International Trade has "exclusive jurisdiction" over Plaintiffs'

10

challenge. 28 U.S.C. § 1581(i); *see also* 28 U.S.C. § 1337(c) (U.S. District Courts lack jurisdiction over all cases in the province of the Court of International Trade). The Court of International Trade and its parent court, the Federal Circuit, are already entertaining numerous other suits challenging tariffs issued under IEEPA. *See, e.g. V.O.S. Selections, Inc. v. Trump*, Nos. 25-1812, 25-1813 (Fed. Cir.) (*en banc*). That is the proper forum, as the District Court concluded.

## CONCLUSION

The Court should affirm.

Respectfully submitted,

/s/ R. Trent McCotter
R. TRENT MCCOTTER
BOYDEN GRAY PLLC
800 Connecticut Ave. NW
Suite 900
Washington, DC 20006
202.706.5488
tmccotter@boydengray.com

DANIEL Z. EPSTEIN
AMERICA FIRST LEGAL FOUNDATION
611 Pennsylvania Ave. SE #231
Washington, DC 20003
202.964.3721
daniel.epstein@aflegal.org

Counsel for *Amici Curiae*

12

## CERTIFICATE OF COMPLIANCE

I certify that this motion complies with the typeface requirements of Rule 32(a)(5) and the typestyle requirements of Rule 32(a)(6) because this brief was prepared in 14-point Century Schoolbook, a proportionally spaced typeface, using Microsoft Word. Fed. R. App. P. 29(a), 32(g)(1). This brief complies with Rule 29(a)(5) because it contains 2,014 words.

<u>/s/ R. Trent McCotter</u>

## CERTIFICATE OF SERVICE

I hereby certify that on this date, an electronic copy of the foregoing brief was filed with the Clerk of Court for the United States Court of Appeals for the Ninth Circuit using the ACMS filing system and that service will be accomplished using the ACMS system.

<u>/s/ R. Trent McCotter</u>